Bentley, J.
This is an action on an appeal arising upon a foreclosure of mechanic’s lien claimed to have been taken upon a certain well and machinery,and appliances used in the construction of the well, and for operating it. There is also in the case .a party claiming to hold certain of the property in question by virtue of a chattel mortgage. In the court of common pleas a receiver was appointed upon the application of one ■of the defendants, who were a partnership engaged in drilling wells and operating them for the purpose of extracting -and marketing the oil and gas produced therefrom. The casing and other appliances that were used in constructing the well were taken out so far as could be, and with the .engine, derrick and other material and machinery that had been used about the drilling and operating of the wells, were sold by a receiver for the lump sum of nine hundred dollars .($900).
Most of the facts are settled by agreement of the parties, except that testimony was heard in this court as to the comparative value of the various articles thus sold by the receiver, in order that a distribution might be had under the statute, in case it were found that the lien of some of the parties extended to certain kinds of property, and not to ■others, upon which other defendants have liens, etc. So that the principal facts are agreed upon, and the testimony thus offered was not controverted.
It presents, simply, then, questions of law as to what rules should be applied in the distribution of the proceeds of the •sale.
There were two oil wells; one was called No. 1, and the other No. 2. At each a derrick was erected, necessarily preliminary to the drilling of the well, and drive pipe was used in both of these wells, as well as casing, and perhaps tubing. An engine was employed at each of the wells, and one boiler ■used for the operation of both wells.
The plaintiffs, Devine & Thomas, under a contract with the lessees who were having these wells drilled and operated, furnished the material for, and constructed the derrick at No. 2; they were paid a portion of the price therefor, but •claim a balance of $194 due to them on account of the construction of that derrick.
Then another creditor of these lessees,The Buckeye Supply •Co., furnished a portion of the pipe and appliances which wrere used in the construction of this well No. 2, to the *725 amount of $123.65, and they also furnished other machinery and appliances which were used in the operation of this well No. 2. Their claim in all amounts to $559.13; all of it, except $123.65, being on account of the machinery furnished for the operation of the well after its completion.
Another creditor of these lessees, Struthers, Wells & Company, claims a lien upon a large amount of the property by reason of a chattel mortgage which had been given to them by the lessees covering this property, or some portion of it, which chattel mortgage, it is claimed by the other parties, is ineffective on account of the failure of the mortgagees to comply with the statutes in regard to chattel mortgages. Then another party defendant and creditor is one Frank Simpson, a laborer who performed labor in the construction and completion of well No. 2, and in the operation of it by attending to the pumping of the well.
And now these various creditors present their claims here for adjustment, and wish to be paid out of the proceeds of the sale as made by the receiver.
The plaintiff filed an affidavit required in order to perfect a lien under section 3184 of the Revised Statutes as amended in 89 Ohio Laws, 373.
The Buckeye Supply Company also filed its affidavit under that statute. Frank Simpson, the laborer, filed his affidavit under section 3206 a, but he also claims that he has a lien under the provisions of section 3184.
Struthers, Wells & Company’s claim rests wholly upon the validity of their chattel mortgage, and before proceeding with the disposition of tho other claims, we will speak of the chattel mortgage.
The lessees who gave this chattel mortgage were partners. They were Simpson Brothers and a man by the name of White. Simpson Brothers resided in Portage township, of this county, and White resided in the township where this court house now is, being Plain township.
At the time the chattel mortgage was made, the office of county recorder was in another part of the village of Bowling Green, and was within the township of Center. Some time after the chattel mortgage was filed, on account of the destruction of the old court house to make room for the new one,the county offices were removed to this building in Plain township. This chattel mortgage was filed originally in the recorder’s office of this county, it, then being in Center township. At that time no one of the mortgagors resided in *726 Center township. The mortgagees, upon filing this instrument with tho county recorder as I have stated, had a copy made of the entire mortgage including the affidavit and verification, and filed it with the township clerk of Portage township, but filed no original paper there, neither chattel mortgage, nor affidavit of verification.
The mortgagees took no further steps than I have indicated, but they claim that when the office of county recorder was moved, for the reason I have stated, over into Plain township, where Mr. White resided, both at the time the cháttel mortgage was given and when the recorder’s office was moved, that that gave some validity to the chattel mortgage.
After investigating this matter and the statute regarding chattel mortgages, we do not see how we can uphold the claims of these mortgagees.
In a case in the 41 Ohio St., 598,- it is said that a chattel mortgage given by partners, in order to have effect, must be filed in each township where any of the partners reside. So that, in order to perfect a lien, it was necessary to file the chattel mortgage in Portage and Plain townships, because the partners resided, respectively, in these two townships.
The chattel mortgage was not'filed in either of these two townships, and what was filed in Portage township ivas a mere copy,and ineffective to creaie alien, as held in the case in the 49 Ohio St., 548. So that, whether the removal of the county recorder’s office subsequently to this toivnhips where Mr. White resided, would under the circumstances effect anything or not,it was not sufficient to give validity to this chattel mortgage, and as against creditors, it would be wholly inoperative and invalid.
These other parties are creditors of these mortgagors, and while some of them have not reduced their claims to judgments. yetive think in a proceeding of this kind their claims must be treated as claims of creditors against this propertjn It is not the person of the creditor, to be sure, which is to be considered in determining whether a chattel mortgage is or is not valid as against his claim. Chattel mortgages, under tbe statute, are invalid under certain circumstances, hut that means as against the legal process caused to be issued by creditors to subject the property, whether by execution, or in any other form in which the law authorizes creditors to-proceed; and; ivhilesomeof these creditors have not attached the property or levied upon if, and while the receiver was appointed, notupon the application of these lien *727 holders, yet we think that the action of the court appointing a receiver necessarily subjected the whole property to the jurisdiction of the court to be distributed; and necessarily these creditors, all of them, became interested in the proceeding. They could not thereafter follow the property by any process of their own; and while they might not in all cases be strictly parties to the action, yet they were interested in it to such an extent that we regard the whole proceeding as a proceeding to subject the property to the claims of creditors, and therefore the law making chattel mortgages in certain cases invalid as against creditors, applies to ail lienholders; so that Struthers, Weils & Company are merely general creditors, having this claim against the lessees, and are to participate in the fund arising from the sale simply as general creditors.
I call special attention to section 3184 of the Revised Statutes, in order to determine the respective rights of these other parties. The section reads as follows: “A person who performs labor, or furnishes machinery for constructing, altering and repairing * * * . or for the digging, drilling or boring, operating, completing or reparing of any gas well, oil well, or any other well, by virtue of a contract with the rwner or his authorized agent, shall have a lien to secure the payment of the same upon such gas well, oil well, or any other well, and upon the material and machinery so furnished, and upon the interest of the owner of the lot or land on which the same may stand, or to which it may be removed.”
That provides that such a person shall have a lien upon the well in the first place. Second, upon the machinery or articles which he shall furnish for the purpose. Third, upon the interest of the owner of the lands upon which the well is situated.
Now, what constitutes an oil well? Because it is evident that the statute does not mean to include in the general term ‘‘oil well” everything that may be used in connection with its construction or operation, because it gives a lien upon the well by reason of furnishing machinery, and upon the machinery. If it gives necessarily a lien upon the machinery used in and about, a well as a part and parcel of the well, it would have been unnecessary to provide that the person furnishing should have a lien upon the machinery itself. So we think that under this statute the three things that a lien may be obtained upon are as I have-stated.
*728 Now, a well consists, as we understand, of a hole in the ground for one thing, through the rock, and down perhaps to the valuable mineral, and necessarily in its construction, and as a part of the construction itself, drive pipe is used which is inserted in the ground and left there as long as the well is in use. Then casing is used, and goes down still further into the rock, and becomes, as we think, under the provisions of the statute, a part of the well upon which a lien may be- obtained under the general term “well”; and from the best light we have as to the manner of connecting tubing with the well, that being iron pipe fastened by means of a packer in the well, and is a necessary part of its construction, though occasionlly removed, and removable, still, liberally construing the statute, that may be said to be a part ■of the oil well, and so far as we are advised, these articles are all that do comprise an oil well.
The derrick, to be sure, is necessary for its construction, but it is not fastened to the well. It may be used for one well, and then taken down and used for another well, and it is used ordinarily in the operation of a well, but it is such a thing as is ordinarily furnished by a different man from the man or men who furnish the other appliances about the well.
The statute gives a lien upon the articles which a particular person furnishes, and in this case these plaintiffs furnished the labor and material for the derrick, and obtained lien ■under section 3184, and we think they obtained a lien upon that derrick- That is all the plaintiffs did furnish, that derrick — and they obtained a lien upon it. They furnished it, however, in the operation of the drilling of the well, as a necessary part of it, and obtained a lien under section 3184 not only upon the derrick, but upon the well; that is, upon those appliances which we think constitute a part of the well itself; and the rest of the property that is mentioned in this case, we think, they did not get any specific lien upon.
It is said in one section of the statute, 3188, “if several liens be obtained by several persons on the same job in the manner prescribed by the foregoing section, they shall have no priority among themselves.” We think this is a “job”, and the statute is to be construed as providing that the plaintiffs and the parties, the Buckeye Supply Company,are to prorate upon that part of the property which constituted the well proper. The Buckeye Supply Company furnished part, and they are to be let in upon the job of constructing the well. The rost of this machinery was furnished for the operation *729 of this well, and they are given a lien upon the property which is thus used in the operation of the well, and which they furnished. As to that property other than the well proper and the derrick, their lien is superior to any claim of the plaintiffs.
We are unable to see that either of these parties obtained' anything under the third subdivision that I have spoken about, viz: Upon the land — the leasehold interest of these parties in the land itself, or any interest in it was not sold. There is nothing in the hands of the receiver as the proceeds of the leasehold interest or land.
We do not think they could obtain a lien upon No. 1 well, and the articles used in connection with it, under the provisions of the statute, as constituting a leasehold interest of' the parties in the land itself.
Now, Simpson was a laborer employed in pumping the-well. He did not file the affidavit required by section 3184, and we are unable to see that he obtained any lien under that section.
He thought, and he thought correctly, that his claim must be under section 8206a. Section 3206a provides that the liens for labor, there provided for, shall be inferior and subject to whatever liens are taken out under section 3184, and this is a general lien upon all the real property of his employer. The section provides that such person performing manual labor shall have a lien upon the real property,which is superior to certain liens, etc. He filed the affidavit under that section,and obtained whatever he has under it. While there was no real property of any value, the proceeds on which are to be distributed in this action, there is a provision that when property is sold by a receiver, and its proceeds are distributed, tho laborers who have been so engaged for three months next preceding the appointment of the receiver shall be first paid out of the proceeds before general creditors, etc. He comes under this clause, and so far as his claim is concerned, we think he obtained a lien in preference to the other general creditors who appear in this case. As the parties are substantially one as regards the facts in the case, we need not figure out the amount, leaving that to the attorneys. But there is a general property to be distributed, the proceeds of No. 1 well and its appliances, and there may be some of the properly that the receiver has sold, and as to> which The Buckeye Supply Company have no lien in the premises as I have stated them, and if so, that is general property subject to the general claims of creditors, except *730 that out of it first should be paid the claim of Simpson, the laborer.
Baldwin & Harrington, for Plaintiffs.
Ira Q. Taber and W. W. Chapman, for Defendants.
I believe there has been no particular amount of costs made from the conflict of liens here. There has been a struggle in the application of the law, and we think that under the’ circumstances the whole fund should bear the burden of the costs of the action. Those should be paid first, and then the balance of the fund distributed as I have indicated.